UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STACI R. COUTE, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Commissioner of Social Security, <br><br> Defendant. | Case No. C13-1077-RSL-BAT <br><br> **REPORT AND RECOMMENDATION** |

Staci R. Coute appeals the denial of her benefits application. She contends the ALJ erred by (1) finding her mental health impairments to be non-severe at step two; (2) discounting her credibility; and (3) finding she could perform past relevant work at step four. Dkt. 12. As discussed below, the Court concludes that the ALJ's step two findings are supported by substantial evidence, the ALJ committed harmful error in discounting Ms. Coute's credibility, and because of this error, it would be premature for the Court to resolve the step four issue now. Accordingly, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

The ALJ held a hearing and subsequently issued a decision in which, utilizing the five-

step disability evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920, he found:

**Step one:** Ms. Coute had not engaged in substantial gainful activity since April 10, 2010.

**Steps two and three:** Osteoarthritis of the left hip and L4 disc bulge were severe impairments that did not meet or equal the requirements of a listed impairment. *See* 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Residual Functional Capacity ("RFC"):** Ms. Coute can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for at least six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday. She can frequently crawl, crouch, kneel, stoop, balance, and climb ramps or stairs. She can never climb ladders or scaffolding and should avoid concentrated exposure to hazards.

**Step four:** Ms. Coute could perform her past work as a receptionist, and therefore she is not disabled.

Tr. 26-33. The parties agree the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

*A.    The ALJ did not err at step two*

Ms. Coute challenges the ALJ's step two finding that her depression, anxiety, and post-traumatic stress disorder ("PTSD") were not severe. Dkt. 12 at 3-8. At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*.

Ms. Coute testified that depression, anxiety, and PTSD limit her ability to work. Tr. 66-

REPORT AND RECOMMENDATION - 2

67, 69, 71-73. The ALJ nevertheless found that her "medical record indicates that her psychological symptoms and impairments, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities." Tr. 28. The ALJ then summarized the sparse medical records, including a May 2010 function report by Ms. Coute, which indicated that mental health issues did not limit her ability to work, Tr. 168-169; an August 2010 examination by Ryan Otten, M.D., in which Mr. Coute did not display any psychological symptoms and scored 30/30 on a mini mental status exam ("MSE"), Tr. 307, 310-11; an August 2011 psychological examination by Owen Bargreen, Psy.D., in which the MSE results were somewhat mixed but Ms. Coute was cooperative, had adequate grooming, was able to recite five digits forwards and backwards, memorized three objects, spelled "world" forwards and backwards, and followed simple commands, Tr. 412-16; and other medical examinations that consistently reported pleasant behavior, good eye contact, and normal mood, speech, and cognition, Tr. 328 (2/21/11 chart note that Ms. Coute "[m]akes good eye contact[;] speaks logically and coherently"), 337 (9/21/11 chart note that "[p]sychiatric affect is appropriate. . . . No looseness of associations or tangential thinking"), 388 (9/8/11 chart note that Ms. Coute had "appropriate affect with normal cognition and speech").

The ALJ also considered the medical opinion evidence regarding Ms. Coute's psychological functioning. Tr. 29. The ALJ adopted the opinion of non-examining doctor Donald Glasco, M.D., that Ms. Coute did not have a severe psychological impairment because this opinion was consistent with the objective evidence and Ms. Coute's May 2010 function report. *Id.* The ALJ gave minimal weight to Dr. Bargreen's opinion that Ms. Coute had marked mental health problems that prohibited her from working. *Id.* Finally, the ALJ rejected the opinion of non-examining doctor Faulder Colby, Ph.D., that Ms. Coute could perform "simple,

repetitive tasks in an appropriate work setting," Tr. 408, in favor of Dr. Glasco's opinion of no severe psychological impairment; the ALJ reasoned that Dr. Colby's opinion lacked supporting objective evidence while Dr. Glasco's opinion was consistent with the longitudinal psychological evidence, Tr. 29.

In challenging the ALJ's step two finding, Ms. Coute focuses her arguments on the ALJ's rejection of Dr. Bargreen's opinion. Dr. Bargreen undertook a clinical examination of Ms. Coute and performed a MSE. Tr. 412-416. He concluded that Ms. Coute's anxiety had a moderate effect on her ability to work, and that her depression, PTSD, and anger problems had a marked effect on her ability to work.[1] Tr. 413. He found that she had moderate limitations in her ability to understand, remember, and persist in tasks involving simple and complex instructions, as well as in her ability to be aware of normal hazards and take appropriate precautions. Tr. 414-15. He also found that she had marked limitations in her ability to learn new tasks, perform routine tasks without undue supervision, communicate and perform effectively in a work setting with public contact or with limited public contact, and maintain appropriate behavior in a work setting. Tr. 415.

The ALJ rejected Dr. Bargreen's opinion for three reasons: (1) "Dr. Bargreen made no reference to objective evidence to support his opined limitations, and appears to have relied exclusively on the claimant's own report of her symptoms and limitations," which the ALJ found to be minimally credible; (2) "Dr. Bargreen's opined limitations are inconsistent with his own examination findings"; and (3) "Dr. Bargreen's opinion is also inconsistent with the claimant's longitudinal psychological evidence." Tr. 29. The parties agree that the ALJ was required to

---

[1] According to Dr. Bargreen's report, "moderate" means the symptom causes "significant interference" with the individual's ability to perform basic work-related activities, and "marked" means the symptom causes "very significant interference." Tr. 413.

REPORT AND RECOMMENDATION - 4

provide specific, legitimate reasons, supported by substantial evidence, to reject Dr. Bargreen's opinion. *See* Dkt. 14 at 4; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

Ms. Coute contends the ALJ's first reason is erroneous because the ALJ ignored objective evidence in the record that supports his opinions. Dkt. 12 at 6-7. The Court agrees. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, there is nothing in the record to suggest Dr. Bargreen disbelieved Ms. Coute's description of her symptoms, and his report indicates that he observed her depressed and anxious appearance, Tr. 412-13, 415, as well as her inability to explain herself or communicate well, Tr. 415. The MSE also indicated that her "ability to combine abstract thinking with fluid intelligence" and "social judgment" were both "below her peers." *Id.* As such, substantial evidence does not support the ALJ's findings that Dr. Bargreen made "no reference" to objective evidence and "relied entirely" on Ms. Coute's self-reports. The ALJ thus erred in this respect.

Ms. Coute asserts the ALJ's second reason is not supported by substantial evidence because "the alleged inconsistency in Dr. Bargreen's opinion exists only as a product of the ALJ's failure to consider the record as a whole." Dkt. 14 at 5. Having reviewed the entirety of Dr. Bargreen's report, however, the Court disagrees. As the ALJ noted, Dr. Bargreen reported Ms. Coute was cooperative, adequately groomed, and had no suicidal ideation during the MSE, Tr. 29, yet Dr. Bargreen still opined Ms. Coute had marked social limitations, Tr. 415. Additionally, Dr. Bargreen opined Ms. Coute had moderate or marked limitations in her ability to follow directions, *id.*, but as the ALJ noted, she was able to recite five digits forwards and

1 backwards, memorize three objects, spell "world" forwards and backwards, and follow simple

2 commands, Tr. 29. Although there are some aspects of Dr. Bargreen's report that support Ms.

3 Coute's position, it is the ALJ's prerogative to resolve contradiction and ambiguity in the record,

4 and on the record here, the Court cannot say that the ALJ's finding was unreasonable.

5 Accordingly, the Court concludes that the ALJ's second reason for rejecting Dr. Bargreen's

6 opinion was supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

7 Cir. 2002) (when the evidence is susceptible to more than one rational interpretation, the court

8 must uphold the Commissioner's conclusion).

9 As to the ALJ's third reason for rejecting Dr. Bargreen's opinion—that it was

10 inconsistent with the longitudinal evidence—Ms. Coute argues that "the mostly normal findings

11 the ALJ cites ignore evidence which detracts from the ALJ's finding." Dkt. 12 at 7. The Court

12 is not persuaded. It is true that an ALJ may not selectively focus on aspects of the record that

13 tend to suggest non-disability while disregarding the remainder of the medical evidence. *See*

14 *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Yet the evidence Ms. Coute points to

15 is insufficient to undermine the ALJ's finding. She relies on treatment notes from 2007 and

16 2008, but the ALJ considered these and concluded that her "treatment prior to 2010 focused

17 primarily on her emotional struggle with physical and emotional abuse from her spouse," Tr. 28,

18 whom she divorced prior to 2010. The Court cannot say this is an unreasonable interpretation of

19 the evidence. Ms. Coute also highlights treatment notes from August 2007, Tr. 278, and January

20 2011, Tr. 329, in which she reported stress making her pain worse, but neither of these treatment

21 notes establish that her psychological impairments cause more than a minimal interference with

22 her ability to work, even when considered in combination with her physical impairments.

23 Finally, she points to a December 2011 referral for treatment for anxiety, Tr. 353, but a referral

alone does not establish that anxiety was a severe impairment.  In short, the ALJ's finding that Dr. Bargreen's opinion was inconsistent with the longitudinal psychological evidence is supported by substantial evidence.

Because the ALJ gave an erroneous reason for rejecting Dr. Bargreen's opinion, the Court must determine whether the error was harmful.  "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  Here, the error was harmless because the ALJ gave other valid reasons for discounting Dr. Bargreen's opinion, and the erroneous reason does not negate the validity of the ALJ's overall assessment of the opinion.  *See Carmickle*, 533 F.3d at 1162.  Accordingly, the Court recommends affirming the ALJ's step two finding.

**B.** ***The ALJ erred in finding Ms. Coute less than fully credible***

Ms. Coute contends the ALJ erred in his adverse credibility finding.  Dkt. 12 at 8-14. Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ gave the following reasons for discounting Ms. Coute's testimony that she suffers from disabling back and hip pain:  (1) she "has demonstrated a pattern of exaggerating her medical history" and biography; (2) there is evidence of drug-seeking behavior; (3) she made inconsistent statements concerning her substance use; (4) her daily activities "are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations"; and (5) her "subjective complaints are greatly in excess of her objective evidence."  Tr. 31-32.  For the reasons described below, the Court concludes that the ALJ's credibility finding is erroneous.

    ***1.***     ***Exaggeration of medical history and biography***

The ALJ discounted Ms. Coute's credibility because he found that she exaggerated aspects of her medical history and biography, offering three reasons for this finding. Tr. 32. This is a proper ground for an ALJ to rely on, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), but the ALJ's finding here is not supported by substantial evidence. First, the ALJ found that Ms. Coute inconsistently reported her reason for moving from Colorado to Washington to live with her son because, "At the hearing, the claimant reported that she moved in with her son due to her physical impairments and limitations. However, in January 2011, the claimant reported to a physician that she was moving in with her son because of a break-up with her boyfriend." Tr. 32. These two explanations are not at odds: Ms. Coute moved in with her son because she broke up with her boyfriend and had no other place to live given her inability to work.

Second, the ALJ found that at the hearing Ms. Coute exaggerated the results of a March 2012 MRI by incorrectly testifying that the MRI "showed a ruptured disc, along with several bulging disks and bone tumors." Tr. 32. Ms. Coute, as a layman, should be afforded some leniency in her attempt to describe medical evidence, and her description is not so far off from the MRI as to raise a reasonable inference of exaggeration. The MRI showed a "broad-based small disk herniation," Tr. 373, and a herniation is known in layman's terms as a ruptured disc. Although very mild, the MRI revealed several disk bulges. *Id.* The MRI also showed "tiny hemangiomas" along Ms. Coute's spine, *id.*, and hemangiomas can be described as tumors. As such, the ALJ erred by finding Ms. Coute exaggerated her MRI results.

Finally, the ALJ found exaggeration because in 2010 Ms. Coute "reported having a 'partial dislocation' of her right shoulder in 2004 (8F). However, X-rays in May 2007 showed mild degenerative changes in the claimant's right shoulder, with an intact joint overall (3F)." Tr.

32. The ALJ accurately summarizes the evidence, but it is unreasonable to draw an inference based on the 2007 x-ray that Ms. Coute lied about partially dislocating her shoulder in 2004. And even if this were a reasonable inference, this scant evidence is insufficient to uphold the ALJ's adverse credibility finding. In sum, the ALJ improperly found Ms. Coute exaggerated her medical history and biography.

### 2. *Drug-seeking behavior*

The ALJ found that Ms. Coute engaged in drug-seeking behavior, which "indicates that some of her symptoms and impairments are exaggerated for the purpose of receiving pain medication." Tr. 32. When a claimant has a nonmedical motive to exaggerate symptoms in order to obtain drugs, an ALJ may properly discredit the claimant. *See Edlund*, 253 F.3d at 1157 (ALJ properly found claimant not credible because he exaggerated "his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction"); *Alexander v. Comm'r of Soc. Sec.*, 373 Fed. App'x 741, 743 (9th Cir. 2010) (drug-seeking behavior may be evidence of "a tendency to exaggerate pain"). Here, however, the ALJ's finding is not supported by substantial evidence in the record as a whole.

As support for his conclusion that Ms. Coute engaged in drug seeking behavior, the ALJ found that "[i]n August 2010, the claimant, reestablishing care after moving to a different state, was prescribed opiate painkillers based on her self-report of symptoms and her empty prescription bottle. No other records were provided (7F)." Tr. 32. This statement does not accurately reflect the record. Ms. Coute moved from New Mexico to Colorado in the summer of 2010. *See* Tr. 259, 304. The chart note from an August 10, 2010 visit to her new doctor in Colorado, Pamela Levine, indicated that Dr. Levine had some records from New Mexico— including information regarding Ms. Coute's prescription history—and that Ms. Coute's "history

REPORT AND RECOMMENDATION - 9

checks with the records we were able to obtain." Tr. 304-05. Dr. Levine thus refilled Ms. Coute's prescriptions for Vicodin and OxyContin. Tr. 305. Moreover, the ALJ failed to consider Dr. Levine's October 11, 2010 chart note, which indicated that Ms. Coute never filled the prescriptions she obtained in August because she was able to continue with the medications from her provider in New Mexico, a report that Dr. Levine confirmed. Tr. 331-32. In fact, Ms. Coute returned the prescriptions to Dr. Levine, who shredded them. *Id.* This act was the antithesis of drug-seeking behavior, yet the ALJ completely ignored it.

The ALJ also attempted to support his finding that Ms. Coute is a drug seeker because "[i]n January 2011, the claimant was denied a request for short-acting opiates, due to her lack of regular treatment (16F/4)." Tr. 32. The January 4, 2011 chart note on which the ALJ relies, however, cannot reasonably be viewed as evidence of drug-seeking behavior. The note indicates that Ms. Coute visited Dr. Levine frequently enough to continue with her prescribed course of Vicodin and OxyContin, but that she needed to see Dr. Levine more than once every three months in order to make changes to this regimen. Tr. 330. And there is a clear explanation in the record as to why Ms. Coute had not pursued more frequent treatment with Dr. Levine: finances. *See* Tr. 333. Further, the ALJ again ignored evidence that Ms. Coute is not a drug-seeker, namely Dr. Levine's February 21, 2011 chart note, which indicates Ms. Coute had not yet filled the January prescription for OxyContin. Tr. 327-28. If Ms. Coute was actually drug-seeking, she likely would have requested more drugs rather than admitted she had an unfilled prescription.

Next, the ALJ pointed to the fact that in January 2012 Ms. Coute left "one treatment provider who insisted on discontinuing her opiate painkillers."[2] Tr. 32. This provider was at a

---

[2] This provider was in Washington, where Ms. Coute had moved some time in 2011. *See* Tr. 32.

clinic that had a policy of not prescribing opiates, and Ms. Coute saw him only because she was initially assigned there by the Community Health Plan. Tr. 227. It thus was unreasonable for the ALJ to infer that the treatment provider discontinued her medications because she was a drug-seeker or that she changed providers in order to inappropriately seek out drugs.

The ALJ also found Ms. Coute to be a drug-seeker because in January 2012 she reported to a provider that a urine analysis would show Percocet, but she did not have a current prescription for Percocet. Tr. 32. This discrepancy could be indicative of drug-seeking behavior, but Ms. Coute has explained that she had taken expired Percocet left over from when she was living in New Mexico because she was in horrible pain and had no doctor at the time to prescribe anything for her. Tr. 225. Ms. Coute's assertion that she took expired Percocet is supported by the fact that the urine analysis came back negative for opiates, suggesting that the medication had lost its potency. *See* Tr. 371. In light of these facts and the absence of other evidence of drug-seeking behavior, the ALJ's reliance on the discrepancy between Ms. Coute's report and her currently prescribed medication does not amount to substantial evidence supporting his adverse credibility finding.

Finally, the ALJ relied on Ms. Coute's dependence on opiate painkillers, which several providers noted. Tr. 32. It is true that a number of providers noted Ms. Coute's opiate dependence. *See* Tr. 270 (5/2/08 chart note from treating physician Nancy Tramil that Ms. Coute had "chronic opiate dependent pain secondary to multiple injuries from 9 VMAs"), 266-67 (9/23/08 chart note from Dr. Tramil indicating the same), 261-62 (3/15/10 chart note from Dr. Tramil indicating "chronic opioid-dependent pain due to osteoarthritis and worse due to falls"), 383-84 (9/8/11 opinion by examining doctor Madhurina Roy that Ms. Coute had "opiate dependence" and would benefit from "treatment of opiate addiction"), 365 (1/24/12 chart note

from treating nurse practitioner April Wolanek that Ms. Coute "has been dependent on pain medications for an extended period of time"), 377-78 (1/25/12 chart note from pain specialist Adam Balkany that Ms. Coute had "opioid dependence"). But evidence of dependence on opiate painkillers does not equate to evidence of drug-seeking behavior, especially where the claimant has a genuine need for the medication. Notably, Dr. Tramil, who treated Ms. Coute for a number of years while she lived in New Mexico, Dr. Levine, who treated her in Colorado, and Nurse Wolanek, who treated her in Washington, all continued to prescribe opiate painkillers, in spite of their awareness of her dependence. Indeed, none of these providers expressed concern that she was drug seeking. On this record, therefore, it was unreasonable for the ALJ to find that Ms. Coute's opiate dependence evidenced drug-seeking behavior.

In sum, when the record is viewed in its entirety, substantial evidence does not support the ALJ's finding that Ms. Coute engaged in drug-seeking behavior. Rather, the evidence establishes that Ms. Coute was honest with her providers about her prescription drug use and even returned unnecessary prescriptions. There is no evidence in the record of typical drug-seeking behavior, such as mismanaging her pain medications, being "fired" from a doctor's care, lying about drug use, secretly acquiring pain medication from multiple physicians at the same time, misleading providers by reporting lost or stolen medications, repeatedly visiting the emergency room to acquire narcotic pain medication, or failing to follow a drug contract. Accordingly, the ALJ erred in finding Ms. Coute's credibility compromised by drug-seeking behavior.

### 3. *Inconsistent statements concerning substance use*

The ALJ found that Ms. Coute made inconsistent statements concerning her substance use. Tr. 32. The Commissioner concedes that this finding may not be supported by substantial

evidence. Dkt. 13 at 4. Having reviewed the record, the Court concurs. For example, the ALJ found that Ms. Coute "testified that she had not recently used any illicit substances, contrary to her admission of marijuana use in January 2012," Tr. 32, however, Ms. Coute actually reported to her doctor that she would test positive for marijuana because she lived with someone who had a medical marijuana license and smoked their house, Tr. 220. As such, the ALJ's determination that Ms. Coute made inconsistent statements concerning substance use is not sufficient grounds to uphold his adverse credibility finding.

### *4.     Daily activities*

The ALJ cited a number of daily activities that he found contrary to Ms. Coute's claims of disabling pain, including her ability to walk for an hour before needing to rest, exercising 30 minutes per day, driving, caring for pets, going out to see movies, completing arts and crafts projects, attending to her daily personal care, and cleaning her home. Tr. 32-33. An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when the activities contradict the claimant's subjective complaints. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Yet the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Ms. Coute contends that the activities relied upon by the ALJ are akin to those in *Vertigan*, which the Ninth Circuit found insufficient to support an adverse credibility finding. Dkt. 12 at 13-14. The Commissioner's response merely restates the ALJ's reasoning. Dkt. 13 at 5. The Court agrees with Ms. Coute. Particularly in light of *Vertigan*, it was unreasonable for

the ALJ to find that her minimal activities were contrary to her claims of disabling pain. As such, the ALJ's reliance on Ms. Coute's daily activities was not supported by substantial evidence.

### 5. *Subjective pain complaints*

The ALJ rejected Ms. Coute's testimony regarding her pain in part because the "objective findings have been inconsistent, but generally benign." Tr. 31. An ALJ may consider whether the objective medical evidence supports the degree of limitation alleged by a claimant, but the lack of such objective evidence "cannot form the sole basis for discounting [subjective] testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As discussed above, the ALJ's other reasons for finding Ms. Coute less than fully credible are erroneous, and therefore, the objective evidence is insufficient to support his credibility finding.

### 6. *Harmful error*

In sum, the ALJ failed to provide a clear and convincing reason to discount Ms. Coute's credibility. Because this error likely impacted the ALJ's RFC assessment, the Court cannot say it was "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1162. Further development of the record is necessary so that the ALJ can assess the impact of his error with regard to credibility on Ms. Coute's RFC. Accordingly, the Court recommends reversing and remanding for further proceedings.

## C. *The Court need not resolve whether the ALJ erred at step four*

Ms. Coute contends the ALJ erred at step four by finding that she could engage in past relevant work as a receptionist. Dkt. 12 at 14-19. More specifically, she asserts that the ALJ improperly found she had past relevant work as a receptionist because this work did not constitute substantial gainful activity. *Id.* at 14-16. And even if she did engage in substantial

gainful activity, she maintains, the ALJ misidentified her past relevant work because he failed to appreciate that it was a composite job. *Id.* at 16-19. The Court, however, need not resolve these issues now because doing so would be premature given the Court's conclusion above that remand is necessary for reconsideration of Ms. Coute's RFC. Nevertheless, the Court recommends directing the ALJ to explain, either on the record during the remand hearing or in his subsequent written decision, the basis for any conclusion that Ms. Coute engaged in substantial gainful activity as a receptionist and whether any past relevant work should be classified as a composite job.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reassess Ms. Coute's RFC and proceed with steps four and, if necessary, five. The ALJ should explain, either on the record during the remand hearing or in his subsequent written decision, the basis for any conclusion at step four that Ms. Coute engaged in substantial gainful activity as a receptionist and whether any past relevant work should be classified as a composite job.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **January 17, 2014.** If no objections are filed, the matter will be ready for the Court's consideration on **January 24, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages.

///

The failure to timely object may affect the right to appeal.

DATED this 3rd day of January, 2014.

/s/ Brian A. Tsuchida
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16